**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**NAEEM RASUL**                                                             **PETITIONER**


**VS.**                                  **5:16-CV-00041-JM/JTR**


**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                          **RESPONDENT**


### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr.  You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

## I.    Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Naeem Rasul ("Rasul").  *Doc. 1.*  Before addressing Rasul's habeas claims, the Court will review the procedural history of the case in state court.

On September 24, 2008, a jury convicted Rasul of second degree murder[1] for killing  twenty-four year old Henry Onukwube ("Onukwube") on the afternoon of October 20, 2007, near a basketball court in Pettaway Park in Little Rock.  *State of Arkansas v. Naeem Rasul*, Pulaski County Circuit Court Case No. 60CR-07-4870 ("state criminal case").[2]  Rasul was sentenced to 20 years for second degree murder, plus an additional 15 years for using a firearm, with the sentences to run concurrently.  *Docs. 11-1*; *11-3.*

In his direct appeal, Rasul's sole argument was that the State failed to sufficiently negate his justification defense.[3]  *Doc. 11-2 at p. 83.*  On September 30,

---

[1]  Under Arkansas law, a person commits second-degree murder if he "knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life."  Ark. Code Ann. § 5-10-1039(a)(1).

[2]  Circuit Judge Herb Wright presided over Rasul's trial and later held a Rule 37 hearing on Rasul's request for postconviction relief.

[3]  Under Arkansas law, self-defense is referred to as "justification."  *See*, *e.g.*, Ark. Code Ann. § 5-2-602 (Justification as defense);  § 5-2-607 (Use of deadly physical force in defense of a person).

2009, the Arkansas Court of Appeals affirmed the conviction, without addressing Rasul's argument on the merits. *Rasul v. State*, 2009 Ark. App. 631 ("*Rasul I*"); *Doc. 11-3* (copy of opinion). Instead, the Court held that Rasul's justification argument was not preserved for review because his trial counsel limited his first directed verdict motion to the first-degree murder charge and failed to argue the State had not proven the second degree murder charge.[4] Thus, "Rasul waived his sufficiency challenge to his conviction of a lesser-included offense." *Doc. 11-3 at p. 4*; *Rasul I*, 2009 Ark. App. 631, *2.

On February 1, 2010, Rasul timely filed a Rule 37 petition, which he later amended to raise six additional claims of ineffective assistance of counsel and one claim of trial error based on an allegedly erroneous trial court evidentiary ruling.

On October 7, 2013, Judge Wright conducted a Rule 37 hearing on Rasul's original Petition, filed *pro se*, and his amended Petition, which was drafted with the assistance of his recently retained counsel, John Wesley Hall, who also represented Rasul during the Rule 37 hearing. On November 13, 2013, Judge Wright entered Findings of Fact and Conclusions of Law denying Rule 37 relief. *Doc. 11-4 at pp. 32-38*.

---

[4] Attorney Lott Rolfe, IV represented Rasul at trial and testified during the Rule 37 hearing.

Rasul appealed two of his postconviction claims to the Arkansas Supreme Court.  He argued his trial counsel, Mr. Rolfe, was ineffective for:  (1) failing to object to the jury instruction on justification being limited to the first degree murder charge; and (2) failing to call an expert witness to testify about PCP's effect on Onukwube, to further support Rasul's justification defense.[5]

On March 19, 2015, the Arkansas Supreme Court affirmed the denial of Rule 37 relief.  *Rasul v. State*, 2015 Ark. 118 ("*Rasul II*");  *see also Doc. 11-6.*

On February 12, 2016, Rasul initiated this § 2254 action claiming that his trial counsel was ineffective for:

    1.    Failing to obtain a jury instruction on self-defense/justification on the second degree murder charge;

    2.    Failing to present testimony and other evidence regarding the victim's death threats against Rasul made shortly before the crime;

    3.    Failing to present expert testimony on the effect of PCP on an individual, to support the impact of Dr. Frank

---

[5] Rasul did not appeal the trial court's rejection of his remaining claims, which included ineffective counsel claims for (1) failing to object or adequately cross-examine a witness from the crime scene unit on the location of the spent cartridges and their relation to the direction of fire; (2) failing to argue that Owunkube's gun could have been removed from the scene before the police arrived; (3) failing to bring out that there was gunshot residue on Owunkube's hands; and (4) failing to appeal the trial court's evidentiary ruling to exclude as hearsay a statement Rasul made to police the night before the murder regarding a confrontation with Owunkube.

Peritti's testimony that the victim had a high level of PCP in his system;

4. Failing to make a proper record and "federalize" the argument that the trial court erroneously sustained the State's hearsay objection when Rasul offered evidence of excited utterances he made to police when he first encountered them during the early morning hours of October 20, 2017;

5. Failing to object or properly cross-examine the State's crime scene investigator regarding the location of the spent cartridges and the direction of the gunshots;

6. Failing to investigate and develop a theory of defense that one or more of the victim=s friends picked up and removed the victim=s gun from the scene of the shooting; and

7. Failing to ensure that the victim's hand were tested to determine the presence of gunshot residue.

Finally, Rasul asserts his constitutional rights were violated when the State destroyed exculpatory evidence, in bad faith, when it failed to have Onukwube's hands tested for gunshot residue.

Respondent argues that all of Rasul's habeas claims fail on one or more of the following grounds: (1) he procedurally defaulted some of his claims by failing to properly raise them in state court; (2) some of his claims were reasonably adjudicated by the state courts; and (3) some of his claims lack merit. *Doc. 5.* Rasul has filed a Reply. *Doc. 18.* Thus, the issues are joined and ready for resolution.

5

For the reasons discussed below, the Court recommends that the Petition for a Writ of Habeas Corpus be denied, and that the case be dismissed, with prejudice.

## II.    Discussion

### A.    Evidence of Guilt

The *Rasul II* court summarized the evidence supporting Rasul's conviction:

The record of trial reflects that appellant and Onukwube were involved in an altercation in the early morning hours on the day the homicide took place. In this incident, appellant struck Onukwube on the head with a pistol, leaving a wound that required stitches. According to appellant's testimony at trial, later that morning Onukwube damaged the door of a home owned by appellant's mother on Vance Street, and Onukwube also hurled a brick through the window of appellant's vehicle that was parked there.

That same afternoon, appellant was driving in a truck with his brother down Twenty-First Street on his way back to his mother's home after purchasing soft drinks at a store. Appellant testified that, as he was passing by the park, he saw Onukwube near a picnic table, and he said that Onukwube retrieved a handgun from his pocket and waved the gun around in a taunting manner. Appellant stated that, fearing for his life and that of his brother and also believing that he could not escape with safety, he stopped the truck, exited, and began shooting his .45–caliber semiautomatic pistol at Onukwube. Although appellant testified that he did not know that his brother had also exited the truck, a witness, Arlin Cheeter, testified that both men emerged in tandem from the truck after it came to an abrupt stop and that both of them immediately began firing their handguns at Onukwube, who ran in the opposite direction. Cheeter also testified that, when the truck passed by the park, Onukwube had "dropped back" and reached under his shirt, as if Onukwube had a weapon. Cheeter said, however, that he did not see Onukwube with a gun, and he denied that he confiscated any weapon from Onukwube after the shooting.

Carlos Chambers was also in the park with Onukwube. He testified that he ran and then hit the ground so as not to be struck by the gunfire. Chambers said that he looked back and saw the men from the truck chasing Onukwube until Onukwube fell onto the basketball court. He testified that he did not see Onukwube with a gun and that he did not see Onukwube do anything with his hand when the truck came to a stop. Chambers said that the men walked away after Onukwube fell.

The police found Onukwube's body lying on a basketball court. They did not locate a handgun in the vicinity of the corpse or elsewhere in the park. In a small confined area, investigators recovered six .45-caliber bullet casings and ten nine-millimeter bullet casings in a linear pattern from the street heading north toward the basketball court.1 Officers also located several bullet strikes in the ground and a projectile on the basketball court. According to the testimony, the direction of fire appeared to be from the south to the north. Despite searching with a metal detector, the officers were not able to find any physical evidence indicating that there were any shots fired, other than those from the south to the north toward the basketball court. There was also no evidence that a weapon other than a nine-millimeter or .45-caliber was used that day. Officers recovered a .45-caliber Glock semiautomatic pistol and a nine-millimeter Ruger semi-automatic pistol from the home of appellant's father. Ballistic testing revealed that the shell casings discovered at the scene were fired from those two guns.

Cameron Menzes testified for the defense and said that his brother, Cheeter, told him that Onukwube had a gun at the park. He said that he did not provide the police with this information because he did not know if it was true.

*Rasul II*, 2015 Ark. 118, *1-*3.

## B.    Discussion of Ineffective Assistance of Counsel Claims

### 1.    Trial Counsel Ineffectiveness Arising From His Submission of Incomplete Jury Instructions.

7

In his Rule 37 Petition, Rasul argued that his counsel was "ineffective for not objecting to the self-defense instruction as being limited to a defense to only murder in the first degree." *Doc. 11-4*, R. 37 Tr. at 26.  During the Rule 37 hearing, Rasul's trial counsel, Mr. Rolfe, testified that he should have made sure the justification defense included in the jury instructions was not limited to the first degree murder charge.  His explanation for not doing so was that he simply "missed" it.[6] *Doc. 11-4*, R. 37 Tr. at 63.

Judge Wright denied Rule 37 relief on this claim for the following reason:

> The evidence introduced at trial does not reflect that the defendant was acting in self-defense when he and his brother shot at the victim. The only evidence presented that he was, came from his own self-serving testimony, which was not corroborated by any of the other witnesses, with the possible exception of Arlen Cheeter, who testified that the victim reached under his shirt, as if he had a weapon.  Even this testimony is in conflict with the defendant's testimony that the victim pulled a gun out of his pocket, not from under his shirt.  *The Court finds that had the jury been instructed on the availability of self-defense regarding the lesser included offenses in this case, there is not a reasonable probability that the outcome of the trial would have been different.*  The defendant has not demonstrated that he was so prejudiced by his attorney's error in this regard as to warrant relief pursuant to Criminal Procedure Rule 37.

---

[6]  Despite this omission, Mr. Rolfe argued to the jury in closing as if the justification defense applied to all charged offenses.  He also argued that Rasul lacked the required mental state for each offense.  *Doc. 11-4*, R. 37 Tr. at 60.

8

*Doc. 11-4*, R. 37 Tr. at 34 (emphasis added). Thus, Judge Wright rejected this claim

because he determined the error by Mr. Rolfe did *not* result in any prejudice to Rasul.

On appeal, the Arkansas Supreme Court affirmed Judge Wright's rejection of

this claim on procedural grounds, because Rasul was raising an issue of law that "he

did not present to the circuit court":

> In his argument on appeal, appellant does not contend that the
> circuit court's findings of fact concerning the absence of prejudice are
> clearly erroneous. Instead, appellant points out that the evidence at trial
> warranted an instruction on self-defense, and he asserts that no one can
> know why the jury acquitted him of first-degree murder. As his claim
> of error, appellant contends as a matter of law that the circuit court, in
> finding that counsel's error was unaccompanied by prejudice,
> impermissibly placed itself in the position of the fact-finder in
> determining a factual issue that should have been resolved by the jury
> at trial. For this proposition, appellant cites *Turner v. State*, 349 Ark.
> 715, 80 S.W.3d 382 (2002), and *Phillips v. State*, 344 Ark. 453, 40
> S.W.3d 778 (2001). Our decision in *Turner* is inapposite because it
> concerns a claim of ineffective assistance of counsel with regard to a
> speedy-trial violation. *Phillips* does not support appellant's argument
> because it stands for the proposition that the reliability of a pretrial
> identification is for the jury to determine. More fundamentally,
> appellant is raising on appeal an issue of law that he did not present to
> the circuit court. At the hearing level, appellant did not raise the
> argument that as a matter of law the circuit court was not permitted to
> assess the prejudice prong of the *Strickland* standard on the jury-
> instruction issue because to do so would place the court in the role of
> the fact-finder. We do not consider issues raised for the first time on
> appeal. *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63. Because
> appellant did not present this argument to the circuit court, we decline
> to address the merits of this contention.

*Rasul II*, 2015 Ark. 118, *8 (2015).

Rasul vigorously disputes the Arkansas Supreme Court's conclusion that he procedurally defaulted this claim. He argues that he "fairly presented" the claim to Judge Wright,[7] but the Arkansas Supreme Court used a narrower "subsidiary" argument as its basis for refusing to consider "the remainder of his overall *Strickland*-based argument." *Doc. 18 at 6*. Rasul urges this Court to apply an exception to the general rule preventing a federal habeas court from inquiring into the correctness of a state's highest appellate court's conclusion that a claim was procedurally defaulted or waived by the petitioner in his state postconviction proceeding.[8]

---

[7] Ordinarily, a district court is precluded from substantively considering any claim that a petitioner has failed to "fairly present" to the highest state court. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir.), cert. denied, 540 U.S. 870, 124 S.Ct. 195, 157 L.Ed.2d 128 (2003); *Trevino v. Dahm*, 2 F.3d 829, 831 (8th Cir. 1993). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark*, 322 F.3d at 1021 (*quoting Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)).

[8] *See Sweet v. Delo*, 125 F.3d 1144 (8th Cir. 1997) ("If the highest court of Missouri concludes that Sweet's claims have not been raised properly in a state habeas proceeding, that is the end of the matter."); *Barksdale v. Lane*, 957 F.2d 379, 383 (7th Cir. 1992) ("[a] federal court sitting in habeas corpus is required to respect a state court's finding of waiver or procedural default under state law. Federal courts do not sit to correct errors made by state courts in the interpretation and application of state law."). *But see Forgy v. Norris*, 64 F.3d 399, 402 (8th Cir. 1995) (deeming state procedural bar inadequate where state supreme court's procedural ruling was contrary to the record and applicable state rules); *Noel v. Norris*, 194 F. Supp. 2d 893, 903 (E.D. Ark. 2002), *supplemented*, (Apr. 16, 2002) and *aff'd*, 322 F.3d 500 (8th Cir. 2003) ("the federal court is barred from reviewing a petitioner's habeas claim under the doctrine of procedural default if … the petitioner has actually violated an applicable state procedural rule"); *Breedlove v. Moore*, 279 F.3d 952, 963 n.8 (11th Cir. 2002) ("In some circumstances, a totally unsupportable construction

10

The Arkansas Supreme Court read Rasul's postconviction appeal brief as asserting *only* that "[t]he trial court erred in putting itself in the role of fact finder in finding [Rasul] was 'not acting' in self defense[,]" a legal argument that he did not make before Judge Wright in this Rule 37 proceeding. *Doc. 11-5 at 12*. The Arkansas Supreme Court was not required to review the postconviction trial court's order denying habeas relief and formulate legal arguments on Rasul's behalf to support claims that were *not* made by his Rule 37 counsel. *See Baldwin v. Reese*, 541 U.S. 27, 31 (2004) (rejecting contention that a habeas petitioner "'fairly presents' a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case").

The Court concludes that Rasul articulated this legal argument to the Arkansas Supreme Court in a way that would allow a reasonable jurist to conclude that it was a "new claim." Accordingly, this Court *cannot* look behind or second guess the Arkansas Supreme Court's conclusion that Rasul raised a new legal argument on appeal that turned on whether Judge Wright, in assessing the prejudice prong of *Strickland*, placed himself "in the role of fact finder."[9] This means Rasul is

---

of state law by a state court will be subject to review by the federal courts, if the construction amounts to an obvious subterfuge to evade consideration of a federal claim.").

[9] Relying on *Strickland v. Washington*, 466 U.S. 668 (1984), Judge Wright found that Rasul failed to prove that, had the self-defense instruction been given, "there is a reasonable probability

procedurally barred from having this Court consider his first ineffective assistance of counsel claim.

Because Rasul has not alleged cause for his default, or attempted to make any showing that he is entitled to review of this claim through the "fundamental miscarriage of justice" exception to procedural bar,[10] the Court need not consider those issues.[11]

---

that the result of the criminal proceeding would have been different." *Id*. at 687-88, 694. According to the Arkansas Supreme Court, this meant that, in his Rule 37 appeal, Rasul was limited to challenging whether Judge Wright erred in holding that the failure to give the instruction did not result in any *Strickland* prejudice.

[10]   When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a "fundamental miscarriage of justice." *Id*. at 750.

[11]   Rasul's argument that this claim rises to the level of "structural error" cannot save it from default.  While structural errors are presumed to be prejudicial, and, thus, not subject to harmless error review, such errors remain subject to the general rules of waiver, forfeiture, and default.  *See Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) ("While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing.... [A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.");  *Hunt v. Houston*, 563 F.3d 695, 704 n. 2 (8th Cir. 2009) (habeas petitioner's structural error claim barred by petitioner's procedural default of claim in state court).

   In making this point, the Court is *not* suggesting that Rasul's structural error argument has merit.  Constitutional error requires a showing that the flawed instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation omitted) (internal quotation marks omitted). The defective instruction "must be considered in the context of the instructions as a whole." *Id*. at 72–73 (citation omitted); *Everette v. Roth*, 37 F.3d 257, 261-262 (7th Cir. 1994) (applying harmless error analysis to appeal of denial

### 2. Trial Counsel Ineffectiveness Arising from Rasul's Failure to Present Testimony Regarding Death Threats Made By the Victim.

Rasul contends that his trial counsel provided constitutionally inadequate legal assistance by failing to present testimony regarding death threats Onukwube made to Rasul approximately 12 to13 hours before Rasul killed him.  Although Rasul testified to the jury about these threats, he argues that his trial counsel should have elicited additional testimony about the threats from police officer Aaron Martin ("Officer Martin").

According to Rasul's testimony, shortly after midnight on October 20, 2007, he was working the midnight shift at an Exxon gas station and convenience store on East Roosevelt in Little Rock.  Onukwube entered the store and became verbally aggressive and assaulted Rasul.  Onukwube and Rasul took their altercation outside, where it escalated to the point that Rasul discharged a pistol "at him, not trying to hit him." Thereafter, Onukwube left the scene.[12]  *Tr. at 308-311*.

---

of § 2254 petition claiming that trial court failed to instruct jury on self-defense at close of murder trial).

[12] While Rasul denied striking Onukwube with the pistol, other witnesses testified that Onukwube told them Rasul had pistol-whipped him during the altercation.  It was undisputed that Onukwube suffered a head injury that required a hospital visit and stitches.

13

Officer Martin was one of two police officers who responded to Rasul's 911 call. Rasul testified at trial that, after the police arrived, Onukwube called him and said, "I swear to God when I see you I'm going to kill you." *Id. at 312-313*. Rasul "put the phone up" to the ear of Officer Martin.[13] *Id. at 317; Doc. 1 at 22-23*. Rasul contends his trial counsel "could and should have questioned" Officer Martin "about what he heard." *Doc. 1 at 22*.

The parties agree this claim is procedurally defaulted because it was not raised in Rasul's state court postconviction proceeding. Rasul cites *Martinez v. Ryan*, 133 S. Ct. 1309, 1320 (2012), to excuse the default.[14] To satisfy *Martinez*, Rasul must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez,* 566 U.S. at 14; *Dansby,* 766 F.3d at 834. For an ineffective assistance of counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least

---

[13] At this point, the prosecutor's objection was sustained and Rasul was not allowed to offer any more testimony about his exchange with Officer Martin.

[14] As applied in Arkansas habeas cases, the *Martinez* exception allows a federal court "to find 'cause,' thereby excusing a habeas petitioner's procedural default, where: (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (*quoting Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013); *see Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (applying *Martinez* and *Trevino* to Arkansas proceedings).

some facts. *Martinez,* 566 U.S. at 14-16. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective assistance of counsel claim is procedurally defaulted and cannot be saved by the equitable exception created in *Martinez. Id.* The substantiality requirement applies to both the performance and prejudice prongs of the *Strickland* standard.

Rasul contends that, if Officer Martin been asked, "he would have told the jury that he actually heard, firsthand, the death threats that Owunkube made toward Rasul." *Doc. 1 at 23.* According to Rasul, this alleged testimony from Officer Martin would have "substantially buttressed Rasul's claim that he was in fear for his life." *Doc. 18 at 11.* Thus, he argues, this claim is substantial, excuses his procedural default, and should be addressed on the merits, following an evidentiary hearing.

Respondent argues Rasul has not met his burden to show that *but for* the omission of this evidence, the outcome of his trial likely would have been different. According to Respondent, the omitted testimony would have been merely cumulative to Rasul's testimony about Onukwube's threats and the alleged threats

by Onukwube were too remote, occurring by phone hours 12 to 13 hours before the murder.[15]

Assuming Officer Martin would have offered admissible testimony that he overheard Onukwube threaten to kill Rasul,[16] Rasul has failed to demonstrate that there is a substantial likelihood this testimony would have changed the outcome of the trial. At most, Officer Martin would have corroborated Rasul's testimony about the threats Onukwube made during their phone conversation; thereby rendering Officer Martin's putative testimony cumulative of the tesimony the jury heard from Rasul. *See Fields v. Roper*, 448 F. Supp. 2d 1113, 1128 (E.D. Mo. 2006) (decision about whether to call certain witnesses is strategic matter left to counsel; failure to

---

[15] While Respondent argues the proposition under a *Strickland* merits analysis, the Court must evaluate this claim under *Martinez*, to determine whether Rasul has established a substantial claim to excuse his procedural default and justify a merits analysis. While the tests for excusing procedural default under *Martinez's* equitable exception and prevailing on the underlying ineffective assistance of trial counsel claim overlap, it makes sense to keep the analysis separate, particularly when a petitioner has *not* been afforded an evidentiary hearing to address the newly asserted ineffective assistance claim. *See, e.g., Camacho v. Kelley*, 888, F.3d 389, 394, n. 3 (8th Cir. 2018) (observing that the record was unclear whether the district court, which held an evidentiary hearing on the petitioner's procedurally defaulted habeas claim, denied relief based on procedural default or the merits, but holding that because "a procedural default analysis [under *Martinez*] and a merits analysis each require application of the Strickland ineffecive assistance standard, our conclusion here would be the same under either analysis."); *compare Hogan v. Kelley*, 826 F.3d 1025 (8th Cir. 2016) (concluding that because habeas petitioner suffered no *Strickland* prejudice, he failed to demonstrate a substantial ineffective assistance claim sufficient to excuse his procedural default).

[16] Respondent questions whether Officer Martin actually heard anything.

16

present "merely cumulative" testimony would not support a finding of prejudice). Additionally, the temporal element is missing that *might* elevate the importance of this evidence to Rasul's defense.  Given the State's strong showing that Rasul chased down an unarmed Onukwube and shot him in the left side of the head, it strains credulity to suggest that Rasul was justified in killing Onukwube because of threats he made 12 to 13 hours earlier.

Thus, Rasul has failed to make a substantial showing that, *if* his trial counsel had elicited testimony from Officer Martin to corroborate Rasul's testimony about Onukwube's telephone threats, the jury's verdict would have been different. Similarly, Rasul has failed to establish, under *Martinez*, that this claim is substantial. Accordingly, Rasul has procedurally defaulted the claim and it should be dismissed.

### 3. Trial Counsel's Ineffectiveness Arising From His Failure To Call an Expert Witness On The Potential Impact of PCP on Onukwuke.

Rasul claims his trial counsel was ineffective for failing to present expert testimony about the effect of Onukwube's PCP consumption prior to him being shot. Respondent argues that, in Rasul's Rule 37 appeal, the Arkansas Supreme Court reasonably adjudicated this ineffective-assistance claim. The Court agrees.

At trial, Associate Medical Examiner Frank Peretti, who performed an autopsy on Onukwube, testified that he had PCP, Oxycodone, and cannabinoids in

his system. *R. at 264*.  He acknowledged that the amount of PCP was "significant." On cross-examination, Rasul's trial counsel elicited testimony that PCP can make people act erratic and irrational, even jumping "through plate-glass windows" or "over overpasses." *R. at 276*.

During the Rule 37 hearing, Rasul presented the testimony of Kim Edward Light, a pharmacologist, about the effects of taking PCP.  Dr. Light agreed with Dr. Peretti's testimony that a person's individual reaction to PCP would "somewhat depend on that person's tolerance." *Doc. 11-4*, R. 37 R. at 46-51.

Rasul's trial counsel, Mr. Rolfe, testified at the Rule 37 hearing that he considered hiring an expert witness to address the PCP issue. However, after talking to Dr. Peretti and finding out he would be able to get some favorable testimony from him and "due to other circumstances with the case," Mr. Wolfe concluded it was not necessary to do so. *Doc. 11-4*, R. 37 R. at 55-56.

The trial court denied postconviction relief on this claim based on its conclusion that Rasul failed to show that Mr. Rolfe's performance was deficient or resulted in any prejudice to Rasul.  *See* Order denying Rule 37 relief, *Doc. 11-14*, R.

37 Tr. at 30-31.  In affirming the trial court's denial of this claim, the Arkansas

Supreme Court properly identified and analyzed this claim under *Strickland*[17]:

> The decision of whether to call a witness is generally a matter of trial
> strategy that is outside the purview of Rule 37.  [omitting citations]  An
> attorney's decision not to call a particular witness is largely a matter of
> professional judgment, and the fact that there was a witness or
> witnesses who could have offered testimony beneficial to the defense
> is not, in itself, proof of ineffectiveness. [omitting citation] Moreover,
> the omission of a witness when his or her testimony is cumulative does
> not deprive the defense of vital evidence.  [omitting citations]
>
> Here, trial counsel offered testimony as to the effects of PCP through
> the testimony of the medical examiner.  Appellant has failed to
> demonstrate that counsel was ineffective for not presenting an
> additional expert witness to give essentially the same testimony on the
> subject. Therefore, we cannot say that the circuit court's finding on this
> issue is clearly erroneous.

*Rasul II*, 2015 Ark. 118, *9.

   For Rasul to obtain habeas relief on this claim, he must demonstrate that the

Arkansas Supreme Court's application of *Strickland* was "unreasonable," *i.e.*, its

decision was "so lacking in justification that there was an error well understood and

---

[17] To prevail on an ineffective assistance of counsel claim under *Strickland v. Washington*,
466 U.S. 668 (1984), a petitioner must establish that his attorney's conduct "fell below an objective
standard of reasonableness . . . under prevailing professional norms," and the "professionally
unreasonable" conduct of counsel "prejudiced the defense."  *Id.*, 466 U.S. at 687-88, 691-92.
Prejudice" is defined as "a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." *Id.* at 694.  If a prisoner fails "to establish
either *Strickland* prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631
F.3d 487, 498 (8th Cir. 2011).

comprehended in existing law beyond any possibility of fair-minded disagreement."

*Harrington v. Richter*, 562 U.S. 86, 101-03 (2011).

Meeting this high bar is a daunting task.[18]  Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

Rasul argues that the Arkansas Supreme Court unreasonably applied both prongs of *Strickland*.  He faults the state court for "rubber stamping" the trial court's rejection of this claim without analyzing whether this strategic decision was

---

[18]  Where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief, on the adjudicated claim, in only three limited situations: the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); (2) "involved an unreasonable application" of clearly established federal law, *id.*; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington,* 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.*

reasonable.  In making this argument, Rasul ignores the deference required of trial counsel's strategic decisions as to which witnesses to call.  *See, e.g., Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990) ("Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight."); *United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011) (The Eighth Circuit has "consistently . . . affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy.") (omitting internal quotations).

Rasul points out that Dr. Peretti was a forensic pathologist, called by the State to establish Onukwube's cause of death, *not* a pharmacology expert like Dr. Light. He argues that Dr. Light's testimony regarding the effects of PCP on the body would have "painted a clear picture in the juror's minds as to Onukwube's likely demeanor, behavior, and violent tendencies while he was under the influence of PCP" and thereby "substantially bolstered" Rasul's testimony and defense "that he was genuinely and reasonably in fear for his life at the hands of Onukwube." *Doc. 1 at 25-26*.

In his cross-examination of Dr. Peretti, Rasul's trial counsel elicited basically the *same testimony* that Rasul now contends he should have elicited by calling Dr. Light.  Based on a review of all of the evidence, it was not unreasonable for the

Arkansas Supreme Court to reject this claim.[19]   While Rasul's argument makes it clear that he disagrees with the state court's analysis of this issue, he does not come close to demonstrating that the Arkansas Supreme Court unreasonably applied *Strickland* in denying this claim.

Because Rasul has failed to show that the Arkansas Supreme Court's rejection of this claim was unreasonable, it should be denied on the merits.

### 4. Ineffective Assistance Claims (4) Through (7) Are Procedurally Defaulted And Not Subject To The *Martinez* Equitable Exception.

In his Rule 37 Petition, Rasul raised ineffective assistance of counsel claims (4) through (7), but then failed to argue them in his Rule 37 appeal to the Arkansas Supreme Court.   Rasul acknowledges these claims are procedurally defaulted, but argues that, under *Martinez*, his procedural default should be excused because his post-conviction appellate counsel was ineffective in failing to include these claims in his appeal of the denial of Rule 37 relief.   *Doc. 18 at 12-14*.   The narrow *Martinez* exception has *not* been expanded to apply to claims that were defaulted by

---

[19]   *See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (under *Strickland*, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," with the burden to show otherwise "rest[ing] squarely on the defendant"); *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

*postconviction appellate counsel. Davila v. Davis*, 137 S.Ct. 2058 (2017) (confirming *Martinez* does not apply to habeas claims based on ineffective assistance of *appellate counsel*); *Dansby v. Hobbs*, 766 F.3d 809, 832-34 (8th Cir. 2014) (declining to extend *Martinez* to reach any other claims of trial error other than ineffective assistance of trial counsel claims).

Accordingly, because Rasul has procedurally defaulted ineffective assistance of counsel claims (4) through (7), those claims should be dismissed.

### C.     Discussion of Rasul's Claim That The State Acted In Bad Faith In Destroying Exculpatory Evidence.

Finally, Rasul contends that the prosecution "deliberately refused" to test Onukwube's hands for gunshot residue, and speculates that the "only reasonable explanation" for its failure to do so is "bad faith . . . for the purpose of sabotaging Rasul's defense of self defense."[20] *Doc. 1* at 35.

Rasul failed to raise this claim in state court, and it is too late to do so now. Thus, this claim is procedurally defaulted. *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). Because Rasul has failed to assert any basis for excusing this

---

[20] In the Rule 37 proceeding, Judge Wright addressed this issue in the context of Rasul's ineffective assistance of counsel claim (7) which asserted that his trial counsel was ineffective for failing to make sure Onukwube's hands were tested for gunshot residue. In rejecting this claim on postconviction review, Judge Wright found: "The defendant's allegation that a gunshot residue test would reveal that [the] victim had fired a gun prior to his death is a bare allegation with no factual substantiation." *Doc. 11-4*, R. 37 Tr. at 33.

procedural default, this claim should be dismissed.  *See Morgan v. Javois*, 744 F.3d 535, 538-539 (8th Cir. 2013) (federal habeas claims were properly dismissed as procedurally defaulted where petitioner failed to attempt to demonstrate cause and prejudice or miscarriage of justice exceptions)

### III.    Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED and this habeas case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 14th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE